IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER BUTTURINI )<br>)<br>*Plaintiff.* )<br>)<br>v. )<br>)<br>JMA RESOURCES, INC., *et al.*, )<br>)<br>*Defendants.* )<br>) | Case No. 1:25-cv-00997<br><br>**Honorable Sparkle L. Sooknanan**<br>United States District Judge |

## PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

Plaintiff Peter Butturini (hereinafter Mr. Butturini), by and through his counsel, file his Opposition in response to Defendants' Motion for Summary Judgment ("Defendants' Motion" or "Motion") and state that Defendants' Motion should not be granted because 1) there are disputes of material fact and 2) the Motion for Summary Judgment Should not be granted as a matter of law.

## LEGAL STANDARDS

In assessing whether summary judgment is proper, the evidence must be viewed in the light most favorable to the non-moving party, drawing all reasonable inferences in her favor, and avoiding weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, "there is no genuine issue as to any material fact" and, second, "the moving party is entitled to a judgment as

1

a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "The requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.  A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *Id*. at 248.  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## FACTS RELEVANT TO THE ARGUMENTS

The relevant facts are set out in Plaintiff's Statement of Genuine Issues of Material Fact in Dispute (hereinafter "Statement") set out in a separate attachment as per Local Rule 7 of the U.S. District Court of the District of Columbia.  This opposition references both paragraphs that are Plaintiff's Response to Defendant's Statement of Undisputed Facts along with the Full Statement of Undisputed Facts (hereinafter referenced as PR ¶¶) that are set out in the Statement.  This opposition also references Additional Material Facts Related to the Dispute set out in the Statement (hereinafter referenced as AF ¶¶).

## ARGUMENT

Under the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301, et seq., and as correctly described in the Motion, an employee is due all wages earned.  So, at issue here is if Mr. Butturini was due the severance noted in the severance clause of his offer letter, which was a

contract.[1]  Thus, the rules of contract construction and interpretation in D.C. should apply to the way the Court views the severance clause.

The basic rules of contract constriction in DC are as follows:

> The determination of whether a contract is ambiguous is a question of law….In reviewing a contract for ambiguity, we consider the face of the document, giving the language used its plain meaning.  Extrinsic evidence of the parties' subjective intent may be resorted to only if the [contract] is ambiguous.  However, the endeavor to ascertain what a reasonable person in the position of the parties would have thought the words of a contract meant applies whether the language is ambiguous or not.  In this context, a reasonable person is: (1) presumed to know all the circumstances surrounding the contract's making and (2) bound by usages of the terms which either party knows or has reason to know.  The reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract.

*Rastall v. CSX Transp.*, 697 A.2d 46, 50-51 (D.C. 1997) (internal citations and quotations omitted).  Also, in the case of ambiguities, when extrinsic evidence of intent is present, summary judgment is generally improper because consideration of such extrinsic evidence is for the fact finder.  *Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013).  Additionally, ambiguities to the meaning are to be construed strongly against the drafter. *Capital City Mortg. Corp. v. Habana Vill. Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. 2000).

**1. Mr. Butturini Was Not Terminated for Cause**

Defendant claims that Mr. Butturini was fired for cause for a "failure to perform the employee's job duties" and state that this was due to a failure to bring in any revenue generating business.  Yet. Mr. Butturini's job duties are described in detail in the same offer letter.  Def's Ex. 1 and Defendant does not point to any actual listed duty at all that they are claiming that Mr. Butturini failed to perform.  PR ¶ 8.  Specifically, brining in new revenue services is not a specific

---

[1] While Defendant does not concede that the offer letter is a contract, Defendant does not make any argument to suggest that the offer letter is not a contract and that is not at issue for purposes of its Motion.

3

duty.  Additionally, Mr. Butturini was only one of a team of people who worked to generate new revenue and his job as structured was not structured in a manner where he was to perform this alone.  AF ¶¶ 3, 8.  And whether a customer accepts a proposal or bid, or any other kind of business, depends upon factors beyond Mr. Butturini's control.  AF ¶¶ 3-4.

Given that Defendant fails to explain how Mr. Butturini did not actually fail to perform his actual listed job duties in Def's Ex. 1, this is clearly reason enough that this argument should not be accepted.  However, there are other reasons that this argument should lose when construed in the light most favorable to the Plaintiff.  All of the definitions of cause are conduct based.  Def's Ex. 1.  This includes things like dishonesty, embezzlement, convictions, and failing to comply with a legal directive.  Similarly, a "failure to perform the employee's job duties" sounds a lot more like conduct, meaning that the employee is intentionally not doing their duties or not working, than a performance issue, which is in line with the other reasons dictating what was cause.  While a complete failure to perform one's duties would yield poor performance, alleged poor performance or not meeting expectations would not equate to a failure to perform his job duties.  If the intention of this clause was to include actual poor performance, that could have been directly listed by JMA's attorney when they drafted it[2].  Likewise, if the contention is that Mr. Butturini "failed to perform his duties" this could have been stated in his Termination Letter.  The absence of these is extraordinary telling.

While the actual meaning of a failure to perform the employee's job duties" is not ambiguous in Plaintiff's reading because that is not the situation applying to Mr. Butturini.  To the extent the Court is persuaded by Defendant's argument that a "failure to perform employee's job

---

[2] Presumably this was not included given the ambiguity of what constitutes poor performance and because this could be a scapegoat reason to supposedly fire someone for cause.

4

duties" somehow encompasses all alleged poor performance, then at best this is ambiguous and something for the trier of fact to decide and should be interpreted against JMA because they are the drafter of this language.[3]

**2. Multiple Reasons Were Cited for Mr. Butturini's Termination to Include a "Change in Priorities and Organizational Direction"**

Ms. Martindell filled out an End of Employment Form that served as the basis for Mr. Butturini's Termination Letter.  PR ¶ 7.  The form and the letter serve to provide the reason why an employee was terminated.  AF ¶ 5.  The End of Employment form cites to the reason for Mr. Butturini's termination being due to a "change in priorities and organizational direction" and "performance".  PR ¶ 7.  These words were applied to the Termination Letter although the word "organizational" was changed to "organization".  *Id.*  It also noted that Mr. Butturini was eligible for rehire upon review.  These words stating that the termination was due to a "change in priorities and organizational direction" sound a lot like "the act of organizing a business…in a new way to make it operate more effectively" and/or "a change in the way that something such as a company is organized, in order to improve it," which are the definitions or reorganization.  *See* AF ¶ 1.  Moreover, Mr. Butturini explained his view to Ms. Martindell of why he wanted to add the word reorganization at the time when they were discussing this clause relating it to a change in reporting structure.  *See* AF ¶ 2.  The organizational charts that literally define the structure of the organization show numerous changes that are surely to help the company operate more effectively or to improve it with many of these changes occurring near the time of Mr. Butturini's termination

---

[3] JMA drafted all of the relevant language in the clause even if parts (although certainly not the parts relating to what constitutes cause) were drafted based on desires of Mr. Butturini to have this protection.  PR ¶ 5.

5

or shortly thereafter as explained through testimony especially with regards to Business Development. *See* Ex. 4; AF ¶¶ 7-13.

Therefore, the most normal interpretation of the severance clause based on the actual meaning of the words used on the severance clause and the words used to fire Mr. Butturini is that Mr. Butturini was indeed fired due, at least in part, to a reorganization.

### 3. There is a Triable Issue of Fact Regarding Whether Mr. Butturini's Firing Was Due to a Reorganization

While there is no dispute as to what the actual Termination Letter says or what the End of Employment form says which the termination was based upon, there is a dispute as to what Mr. Butturini was told at the time of his termination. In JMA's version, they made it about performance only, but in Mr. Butturini's version it was explained to him using the same words as his Termination Letter and he understood it to be about organizational changes. PR ¶ 6. This is a clearly disputed material fact. Lending additional credit to Mr. Butturini's view is that Mr. Butturini had never been placed on a PIP and had generally positive performance reviews. AF ¶ 5.

Lending additional credit to Mr. Butturini's view is the shifting explanations of why he was fired. The official reason he was fired by the letter was related to a change in priorities and organization[al] direction and performance. In interrogatories, JMA changed their tune to state that the firing was solely Mr. Butturini's fault and included performance and a rather spurious claim that his firing was also "due to his demeanor and complaints made about his work behavior." AF ¶ 7. Now JMA has shifted in this Motion to make his firing solely about his performance. A very reasonable inference to draw from this shifting narrative is that JMA's most recent stated reason for firing is not accurate. Moreover, "[s]uch shifting and inconsistent justifications are probative of pretext." *Geleta v. Gray*, 396 U.S. App. D.C. 87, 92, 645 F.3d 408, 413 (2011)

(internal quotation and citations omitted).  JMA's contradictory claims are in and of themselves material facts that show a dispute.

JMA also tries to claim that the fact that other parts of the contract state that Mr. Butturini's duties, title, and who he reports to can be changed would be evidence that the definition of reorganization should not be interpreted as described above (although they made Plaintiff's definition somewhat narrower than fully described above).  However, that is nonsensical.  Just because JMA is allowed to change his duties, title, or who he reports to, the protection the severance clause offers would not be rendered ineffective.  Mr. Butturini is still protected if these changes lead to his firing.  And if there was a question regarding this, at worst for Plaintiff's case, this would mean that there was some ambiguity that needed to be decided by a trier of fact and construed against the drafter (JMA).  Likewise the fact that Mr. Butturini is an at-will employee does not render the severance clause ineffective.

Finally, there is ample evidence present that why Mr. Butturini was fired relates to a reorganization.  Aside from what the official documents said and Mr. Butturini's testimony was regarding why he was told he was fired, one needs to look no further than the ample changes the Business Development department has undergone since Mr. Butturini came aboard.  Mr. Butturini was hired as part of a package team in Business Development, starting from scratch, where he was to do the front end of the Business Development process and his teammate (Ms. Mansfield) was to perform the capture process.  AF ¶ 7.  Yet, after his teammate left within about a year (and had been making arrangement to leave earlier), they did not backfill and hire anyone with her skillset and elevated someone with minimal experience (Mr. Yanik) into that role.  AF ¶¶ 10-11.  Shortly thereafter, JMA focused on getting business revenue from non-competitive bids and hired a person to be in charge of Business Development (Mr. Doherty) including Mr. Butturini, which represented

a dramatic shift of JMA's goals and away from what Mr. Butturini was hired to do. AF ¶ 11. This person lasted less than 2 months. *Id.* Then JMA chose to hire a new vice president (Ms. Engle) to head the Business Development department with a different job description and set of responsibilities from that person into a position that dealt with Business Development as part of her job but also client experience and fired Mr. Butturini before she came aboard. AF ¶ 13. Since then, there has been a dramatic revamping of the jobs in Business Development and who is involved with Business Development at JMA and notably JMA hired a person (Mr. Clayton) who was to be responsible for the whole process of business development, working under Ms. Engel, instead of splitting the different parts of the process between two people like when Mr. Butturini came along with his teammate Ms. Mansfield. AF ¶ 13. Effectively JMA organized itself in a different way which involved more people from senior leadership being involved in Business Development while streamlining the personnel at Mr. Butturini's level. *See Id.* This put Mr. Butturini out of a job, which is something a trier of fact could surely find and decide invokes the severance clause.

## CONCLUSION

Defendants' Motion for Summary Judgment should not be granted because there are disputes of material fact and Summary Judgment is not warranted as a matter of law.

October 16, 2025                                         Respectfully submitted,

**ERIC SIEGEL LAW, PLLC**

/s/ *James E. Miller*
Eric L. Siegel (D.C. Bar No. 427350)
James E. Miller (D.C. Bar No. 1035476)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (771) 220-6116; (771) 220-6061

Email: esiegel@ericsiegellaw.com;
jmiller@ericsiegellaw.com

*Attorneys for Plaintiff Peter Butturini*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 16, 2025, I caused a copy of the foregoing was served by electronic mail to counsel for Defendants.

/s/ *James E. Miller*
James E. Miller