**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

<table>
<tr><td>PETER BUTTURINI,<br><br>                            Plaintiff,<br><br>v.<br><br>JMA RESOURCES, INC., <em>et al</em>.<br><br>                        Defendants.</td><td>Civil Action No. 1:25-cv-00997-SLS</td></tr>
</table>

**DEFENDANTS JMA RESOURCES, INC.'S AND NANCY MARTINDELL'S REPLY TO
PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants JMA Resources, Inc. ("JMA") and Nancy Martindell

("Martindell"), by counsel, and hereby submit this Reply to Plaintiff Peter Butturini's

("Butturini") Opposition to Motion for Summary Judgment (hereinafter, referred to as the

"Opposition" and the "MSJ", respectively).  In support of their Reply, JMA and Martindell state

as follows:

    **I.**        **Reply to Plaintiff's Response to Defendants' Statement of Undisputed Material
                Facts.**

Defendants reply to Butturini's response to their Statement of Undisputed Material Facts

("SUMF") as follows[1]:

SUMF ¶ 5: Butturini does not dispute the facts stated, but adds additional qualifying facts.

The additional facts added by Butturini are not material, and do not create a dispute of fact

applicable to the arguments raised in the MSJ.  The salient point is that Butturini collaborated

with Defendants in the development of this clause which was unique to his Offer Letter.

---

[1] The facts listed in Defendants' SUMF that are not in dispute will not be listed again herein.

SUMF ¶ 6:Butturini's "perspective" on why he was being fired is immaterial. What is material is that "performance" was a reason he was given for termination, which he admits. The fact that Butturini was terminated for performance (which is "for cause," regardless of Butturini's convoluted argument further discussed below), even if for other reasons as well, negates the entitlement to severance by the plain language of the Offer Letter, which requires a "reorganization" to "directly cause" the termination. A "reorganization," even if one occurred as Butturini alleges, could not have directly caused his termination when he was also terminated for performance reasons. And indeed, as is well settled, it is the employer's perspective on an employees' performance that is relevant, not what the employee thinks of his own performance. See Gross v. Akin, 599 F.Supp.2d 23, 31 (D.D.C. 2009) ("…plaintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decisionmaker which is relevant.") (citations omitted); see also Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) ("[i]t is the perception of the decision maker which is relevant,"); Conyers v. Virginia Housing Development Authority, 927 F.Supp.2d 285, 292 (E.D. Va. 2013) (the employee's own perception of his performance is irrelevant).

SUMF ¶ 8: Butturini's response creates no genuine dispute of material fact. Butturini's dispute of this fact ignores his own deposition testimony wherein he agreed that part of the performance of his job included bringing in new, revenue generating business, which he does not dispute that he failed to do over his 18-months of employment with JMA (see SUMF, ¶ 9; Butturini's response to SUMF ¶ 10). Butturini's strange new contention that his job as the Vice President of Business Development does not include bringing in new business because his Offer Letter did not specify how much business he was required to bring in over what timetable, is preposterous. There is no purpose to "business development" other than to bring in new

business.  Without new, revenue generating business, there is no "business" actually being developed, and zero justification for Butturini's continued employment.

Furthermore, Butturini's contention that "others" were also part of the process of business development is irrelevant and immaterial.  What was expected of other employees has nothing to do with Butturini's failure to perform this key function of his job.  Indeed, it is common sense that the "Vice President of Business Development" would be expected to develop business, and Defendants' reasonable expectations in that regard can hardly be genuinely in dispute.

SUMF ¶ 9: As noted above, Butturini admitted in deposition that the performance of his job included bringing in new, revenue generating business.  The exact question and answer follow:

Q:…Did your performance or the performance of your job have anything to do with bringing in revenue generating business, in your opinion?

A: The role of business development is in identifying and -- and qualifying opportunities, is essential to creating a pipeline for new opportunities that the -- that a company can pursue. So -- so yes.

See Butturini's deposition, Ex. 3 to MSJ, p. 101:4 – 12.  Not only was Butturini's response to this clear question unequivocal, but it would have been ludicrous for him to deny it.  Butturini's "dispute" of this fact now, which is at odds with his own deposition testimony, does not create a genuine dispute of material fact sufficient to defeat Defendants' MSJ.

SUMF ¶ 11:   Although Butturini attempted to dodge the question regarding his understanding of whether his job was at risk following the May 2024 business development meeting, he does admit that:

A:  In those circumstances, everyone's job in business development is always at risk. I'll just respond that way. Of course. I mean, you know.

3

*See* Butturini's deposition, Ex. 3 to MSJ, p. 97:14 – 17.  Indeed, we do "know" what Butturini

meant by this statement; it is not hard to understand that when your boss calls a meeting and

stresses that new business must be brought in by the end of the fiscal year or there would be

changes to the business development team and consequences, your job as the Vice President of

Business Development may be at risk, particularly when you know you have not brought in *any*

new business during the time of your employment.  Buttuini's contention in his Opposition that

SUMF ¶ 11 is "not the most accurate characterization of" what he said in deposition is beside the

point, and does not create a genuine dispute of fact here.

SUMF ¶ 13:    Butturini does not actually dispute the fact stated in this paragraph, that he

considered a change in supervisor to be a "reorganization" as contemplated by the Offer Letter.

Butturini's characterization of his testimony as "nuanced" is immaterial.  Regardless of any such

"nuance," Butturini still must show that a "reorganization," regardless of how it is defined,

*directly caused* his termination, which there is no evidence in this case to support.

SUMF ¶ 14:    Butturini does not actually dispute the fact stated.  He acknowledges that

his supervisor, whether it was Yanik or Doherty, did not terminate his employment, and that the

decision to terminate his employment was made by Martindell.  As such, a change in supervisor

did not directly cause his termination, and Butturini's attempt to create a disputed fact here fails.

II.    **Response to Plaintiff's "Additional Material Facts Related to the Dispute."**

Responding to Plaintiff's "Additional Material Facts Related to the Dispute" ("AMF"),

Defendants state as follows:

AMF ¶ 1:  Butturini fails to cite anything in the record in this case to support this alleged

material fact, but notably, this dictionary definition does not list "change of supervisor" under the

definition of "reorganization." Regardless, this dictionary definition is not a material fact in this case and irrelevant to the issues presented by the MSJ.

AMF ¶ 2: Butturini continues to attempt to create a dispute of material fact with regard to the meaning of "reorganization." Although it seems there can be no genuine dispute of fact that "reorganization" does not mean "change in supervisor," even if this Court accepts Butturini's apparent contention that the meaning of the term is disputed, it does not create a dispute of material fact that changes the legal analysis of this case. Butturini cannot recover in this case unless the "reorganization" of JMA *directly caused* his termination and he was not terminated for cause. Since Butturini's performance was at least a major (and Defendants contend, the only) reason for his termination, even viewing all facts in the light most favorable to Plaintiff, any alleged "reorganization" could not have been the *direct cause* of his termination.

AMF ¶ 3: This fact is irrelevant and immaterial. It does not matter how many people worked on business development at JMA; Butturini was the Vice President of Business Development and was expected to bring in new business (and he, himself, admitted this was one of his duties). Butturini admits he did not bring in *any* business during his time employed with JMA.

AMF ¶ 4: Again, as with the fact listed in AMF ¶ 3, this "fact" is irrelevant and immaterial here. Whatever factors a potential customer may consider in deciding whether to do business with JMA, Butturini, as the Vice President of Business Development, was expected to "close the deal," so to speak, and actually bring in new business. This he failed to do, and as the major function of his job -- indeed, the reason his job even existed -- this performance failure was fatal to his continued employment.

AMF ¶ 5:  Defendants do not dispute that Butturini was never placed on a PIP and acknowledge that his sole annual performance review, performed in the Fall of 2023 approximately one (1) year prior to his termination, was "generally positive."  However, it was noted in that performance review that Butturini needed to start bringing in new business.  *See* 2023 Performance Review, attached hereto as Exhibit 8, p. 2.  In other words, Butturini knew, long before the May 2024 meeting even, that he needed to start bringing in new work.  Regardless, whatever Defendants thought about Butturini's performance in 2023 is immaterial; he was not terminated in 2023.  A lot can change in one year.  It is what Defendants thought about Butturini's performance a year later, when he was terminated, that matters.  And it is the employer's perception of the employee's performance that counts.

AMF ¶ 6:  Defendants do not dispute that the End of Employment form and termination letter cited both "change in priorities and organizational direction" and "performance" as the reasons for Butturini's termination.  It may be debatable whether a "change in priorities and organizational direction" is a "reorganization" of the company as contemplated by the Offer Letter, but that is not material here.  Again, what is material, and undisputed, is that "performance" was a reason for Butturini's termination.  As such, a "reorganization" of JMA could not have been the direct cause of his termination, even if "change in priorities and organizational direction" could constitute a "reorganization."

AMF ¶ 7:  Even if Butturini's failure to perform his core job duty of bringing in new business was only the "primary reason" for his termination, that is all that is needed for summary judgment here, because the Offer Letter requires that a "reorganization" directly cause the termination in order for the severance to be owed.  Butturini's protestation that Answers to Interrogatories also noted complaints about Butturini's demeanor and behavior by other

6

employees is immaterial.  Defendants have chosen not to highlight that in this case, but their

decision not to do so hardly creates a dispute of material fact applicable to the MSJ.  If anything,

that would be yet another reason under "cause" for Butturini's termination, which would again

negate the obligation to pay severance.

AMF ¶ 8:  Defendants do not dispute that they hired additional employees into business

development roles both before and after Butturini's termination.  This is not material, and if

anything, shows how seriously Defendants took business development and how Butturini's

failure to bring in any new business in 18-months was a major failure to perform.  The fact that

the business development department continued after Butturini's termination further

demonstrates that there was no "reorganization" at JMA.  And even if hiring new employees

could be considered a "reorganization," the Defendants' continued commitment to business

development makes the claim that any "reorganization" directly caused Butturini's termination a

logical fallacy.  If Butturini had been performing well and bringing in new business, it is hard to

imagine that even he would contend he nevertheless would have been terminated, particularly

when JMA showed such a commitment to the role of the department.  Indeed, Butturini would

have perhaps had an argument that a "reorganization" directly caused his termination if he had

been performing well by bringing in new business or if JMA had completely eliminated the

business development department altogether, but neither thing happened here, and the facts listed

in this paragraph do not create any genuine dispute that defeats the MSJ.

AMF ¶ 9:  See response to AMF ¶ 8.  Looking for additional sources of revenue is still

business development and has nothing to do with a "reorganization" of the company.  This is not

material.

7

AMF ¶ 10: See response to AMF ¶ 8.  Again, adding additional personnel to business development does not "reorganize" JMA.  This is not material.

AMF ¶ 11: See response to AMF ¶ 8.  Additionally, as previously noted, a change in supervisor, or the addition (or subtraction) of employees to the business development department does not "reorganize" the company.  Nor does any of this, even if considered a "reorganization" of JMA, demonstrate that Butturini's termination was directly caused by such "reorganization," when there were clear and plainly expressed problems with his performance – namely, his failure to bring in any new business.

AMF ¶ 12: Butturini's "belief" as to why he was terminated is immaterial.  He was told in person, and in writing, that his termination was based, at least in large part, on his performance.  JMA's internal documents support this conclusion.  Butturini knew he had failed to bring in any new business during his time at JMA and that this was part of his job.  His termination cannot be "directly caused" by any alleged "reorganization" as a matter of law.

AMF ¶ 13: See response to AMF ¶ 8.  As noted above, had JMA eliminated the business development department and then fired Butturini, he might have had an argument that a "reorganization" directly caused his termination.  But the fact that JMA continued hiring into the business development department, even bolstering its numbers, completely undercuts the argument that this was a "reorganization" that directly caused his termination.  Regardless, Butturini was failing in the performance of his primary job duty – to bring in new business.  This is why he was fired, and no reasonable juror could conclude otherwise.

### III.    Argument in Reply

### A.  Butturini was terminated for cause.

Butturini argues that he was not terminated for cause because his Offer Letter did not

specify that "bringing in new revenue services" was part of his job duties.  _See_ Opposition, p. 3.

This argument is illogical and erroneous.  Butturini was the Vice President of Business

Development.  It is impossible to imagine that his job would _not_ entail bringing in new revenue

generating business.  There would be absolutely no reason for Butturini's job to exist if that were

not part of his duties, and he even conceded in deposition that it was one of his duties.  His 2023

performance review specifically mentioned that he needed to start bringing in new business.  _See_

Exhibit 8.  He admits that the subject of the May 2024 meeting was bringing in new business.

_See_ Doc. 12-1, p. 4, ¶ 11.  Butturini does not dispute that he was told on November 7, 2024, that

he had not met Martindell's expectations by failing to bring in new business.  _Id._ at p. 3, ¶ 6.

Additionally, the Offer Letter specifies a host of business development duties, such as:

proactively identify new business opportunities; assessing and developing new and existing

corporate growth opportunities; building business relationships; leading the development,

organization, and execution of significant business development activities, including building

industry teams, assessing win probability, and executing customer call plans; and, developing

and cultivating partner/teaming relationships with external teaming partners.  _See_ Ex. 1 to MSJ,

pp. 1 – 2 (Doc. 11-2).  None of these duties have any point at all _if they never result in bringing_

_in new business._  That is the whole point of these duties, and Butturini's argument now that he

had no duty to actually bring in business, is ludicrous.

Furthermore, Butturini's argument that it was not his job to bring in new business

because he was only "one of a team of people" tasked with business development is beside the

point, and immaterial here. *See* Opposition, p. 4. So is his contention that he had no duty to bring in new business because whether a customer "accepts a proposal or a bid" or enters into an relationship with JMA is "beyond [his] control." *Id.* As noted above, it does not matter how many people worked on business development at JMA; Butturini was the Vice President of Business Development and was expected to bring in new business (as he, himself, admitted). If he fails to do so, continuously over an 18-month period, he cannot reasonably expect to continue employment, regardless of whether it was his "fault" because it was "beyond his control."

Butturini's convoluted argument that "failing to perform his job duties," as listed in the Offer Letter as a "cause" for termination must have meant only a complete and total failure to perform *all* job duties, i.e., not actually working at all, is meritless conjecture. *See* Opposition, p. 4. Butturini cannot reasonably or seriously believe that he could only be fired for performance reasons if he totally failed to perform every single job duty he had. Any at-will employee's failure to perform *any* of his job duties could be cause for termination. And here, Butturini failed to perform the most important of his job duties, indeed, the raison d'être for his job – to bring in new revenue generating business. Thus, by the plain language of the Offer Letter, which does not provide for severance if Butturini was terminated for cause, summary judgment in Defendants' favor is appropriate.

**B. The evidence in this case is clear that Butturini was terminated due to performance, but even if performance was only one reason for his termination, that is enough to remove any genuine dispute of material fact that his termination was "directly caused" by a "reorganization" of JMA.**

Butturini argues that a genuine dispute of material fact exists between the parties because performance was only one of the reasons listed in the End of Employment form and in his termination letter, and another reason listed was "change in priorities and organizational direction." *See* Opposition, p. 5. Butturini argues that a "change in priorities and organizational

direction" "sound[s] a lot like" the dictionary definition of "reorganization" he included, without

citation to the record, in his AMF ¶ 1. *Id.*

However, regardless of what Butturini thinks "change in priorities and organizational

direction" sounds like, his argument here fails. In order for severance to be owed under the

Offer Letter the alleged "reorganization" would have had to *directly* cause Butturini's

termination. Since the record is clear that one of the reasons (at least) for his termination was

lack of performance, which is a "cause" as defined by the Offer Letter (i.e., "failure to perform

the employee's job duties"), any alleged "reorganization" could not have *directly caused* his

termination. As such, there is no genuine dispute of material fact that would require this Court to

deny Defendants' MSJ.

### C. There is no genuine dispute of material fact regarding whether Butturini's termination was directly caused by a "reorganization."

Butturini next argues that a triable issue of fact exists because he "understood" his firing

to be "about organizational changes." *See* Opposition, p. 6. Butturini, however, admits he was

told during the November 7, 2024, meeting, in which he was advised his employment was being

terminated, that it was also due to "performance." *Id.* (Butturini states that it was "explained to

him using the same words as his Termination Letter…"). Butturini's "understanding" is

immaterial when he admits he was told his termination was based, at least partly, on

performance.

Butturini also admits that the End of Employment form and his termination letter list

"performance" as a reason for his termination. Since his termination was based, at least in part,

on performance, it could not have been directly caused by any alleged "reorganization." As

such, there is no genuine dispute of material fact on this point.

Butturini's argument that there have been "shifting" reasons given for his termination is inaccurate. *Id.* at p. 6. The End of Employment form, what he was told in the November 7, 2024, meeting and what was stated in his termination letter all gave the same reasons for his termination. The fact that JMA's Answers to Interrogatories also noted complaints about Butturini's demeanor and behavior by other employees is immaterial. "Pretext" is not a legal concept at issue in this case; this is not a case of employment discrimination or retaliation. What matters in this case is the plain language of the Offer Letter, and Butturini's failure to demonstrate any genuine dispute of material fact that would permit a reasonable jury to conclude that any "reorganization" of JMA directly caused his termination.

The facts that JMA hired other people into the business development department while Butturini was employed, changed his supervisor, and even expanded the business development department after he was terminated, hardly demonstrate a "reorganization" of the company, or that Butturini's termination was "directly caused" by same. *Id.* at p. 7 – 8. Instead, the fact that the business development department continued after Butturini's termination further demonstrates that there was no "reorganization" at JMA. And even if this could be considered a "reorganization," the Defendants' continued commitment to business development makes the claim that it "directly caused" Butturini's termination nonsensical.

It should be noted that Butturini bears the burden of proof in this case. It is his burden to prove that there was a "reorganization" of the company, that such "reorganization" directly caused his termination, and that he was not fired for cause (non-performance). He bears the burden of proving all three of these elements, and on the evidence in this case, no reasonable jury can conclude that he has. Defendants' MSJ should be granted.

12

WHEREFORE, for the above good and valid reasons, and those contained within their Motion for Summary Judgment, Defendants' respectfully request that their Motion for Summary Judgment be granted, and that judgment be entered in their favor.

Respectfully Submitted,

FRIEDLANDER MISLER, PLLC

/s/ Joseph W. Santini

_____

Joseph W. Santini, Esq., DC Bar # 485456
5335 Wisconsin Ave., NW, Suite 600
Washington, DC 20015
202-872-0800
202-857-8343 (fax)
*jsantini@fmlaw.com*

*Attorneys for Defendants JMA Resources, Inc. and Nancy Martindell*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 23rd day of October 2025, I sent the above Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment via the Court's ECF system to:

James E. Miller, Esq.
Eric L. Siegel, Esq.
ERIC SIEGEL LAW, PLLC
888 17th St., NW, Suite 1000
Washington, D.C. 20006
*Attorneys for Plaintiff*

/s/ Joseph W. Santini

_____

Joseph W. Santini