**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER BUTTURINI,<br><br>     *Plaintiff,*<br><br>  v.<br><br>JMA RESOURCES, INC., *et al.*,<br><br>     *Defendants*. | Civil Action No. 25-997 (SLS)<br><br>Judge Sparkle L. Sooknanan |

<u>**MEMORANDUM OPINION**</u>

Peter Butturini served as the Vice President of Business Development at JMA Resources, Inc. for nearly two years. During that time, Mr. Butturini failed to bring in a single dollar of new business. JMA warned Mr. Butturini that he needed to improve his performance and, when he did not, JMA terminated him. He sued JMA seeking to recover a severance package to be paid if he was terminated "for reasons other than cause"—for example, if the company was acquired or restructured in a way that eliminated his position. JMA now moves for summary judgment, arguing that Mr. Butturini is not entitled to the severance package because he was terminated for cause and no reasonable jury could find otherwise. The Court agrees and grants JMA's motion.

**BACKGROUND**

**A.      Factual Background**

The Court draws the facts from the Defendants' Statements of Material Facts (DSOF), ECF No. 11-1 at 2–5, the Plaintiff's Statement Regarding Disputed Material Facts (PSOF), ECF No. 12-1, and the underlying materials referenced in those statements. The Court assumes the facts in the Defendants' Statement to be true unless the Plaintiff has specifically disputed them. *See* Fed.

R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1] The Court also draws undisputed background facts from the Complaint. Compl., ECF No. 1.

JMA is a business and IT consulting firm that was founded in 2018 by Nancy Martindell. Compl. ¶ 4; DSOF ¶ 12. Ms. Martindell is JMA's President, Chief Executive Officer, and sole owner. DSOF ¶ 12; Compl. ¶ 5.

In March 2023, JMA hired Mr. Butturini to serve as its Vice President of Business Development. DSOF ¶ 1; Offer Ltr., ECF No. 11-2. Mr. Butturini's Offer Letter detailed various "duties and responsibilities" that JMA expected him to perform. Offer Ltr. 1–2. These included "[p]roactively identifying new business opportunities," "[d]evelop[ing] and improv[ing] business growth strategies," and "[l]ead[ing] [the] business development process." *Id.* at 1. The Offer Letter also contained the below clause:

> In the event there is a change in the Company's ownership or reorganization that directly causes the termination of your employment for reasons other than cause (defined below) within thirty (30) days following the change of ownership, JMA agrees to provide you with a minimum of four (4) months' notice to include full salary and compensation package.

*Id.* at 2. The Letter went on to define "cause" to include, among other things, "[f]ailure to perform the employee's job duties." *Id*.

During the first year of his employment with JMA, Mr. Butturini "did not bring in any revenue generating business." DSOF ¶ 10. By the end of that year, Ms. Martindell had "becom[e] impatient with the pace of business development," as she "had invested a lot of money in the growth side and hadn't seen any results." Butturini Dep. 47:12–14, 93:8–18, ECF 12-2. In May 2024, she met with Mr. Butturini and other members of the business development team and

---

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

conveyed that "she was frustrated and wanted some kind of revenue, any revenue," and that if the team could not deliver, "there would be consequences." Butturini Dep. 94:10–12, 97:6–8. Mr. Butturini left the meeting with the understanding that "everyone's job in business development [was] at risk." Butturini Dep. 97:14–17.

Over the next six months, the business development team did not rise to Ms. Martindell's challenge and failed to "bring in any revenue generating business." DSOF ¶ 10. On November 7, 2024, Ms. Martindell advised Mr. Butturini that his employment was being terminated. PSOF ¶ 6. According to Mr. Butturini, Ms. Martindell told him that he was being terminated because of a "change in priorities, organizational change . . . and for performance." Butturini Dep. 99:19–22. Mr. Butturini's formal termination letter echoed this explanation, stating that JMA was terminating him "due to a change in priorities and organization direction and [his] performance." Termination Ltr., ECF No. 11-8. Mr. Butturini's termination was made effective two weeks later, on November 22, 2024. *Id.*

## B.    Procedural Background

Mr. Butturini filed this lawsuit on April 3, 2025, bringing one claim against JMA and Ms. Martindell (collectively, JMA) for violating the D.C. Wage Payment and Collection Law (DCWPCL). Compl., ECF No. 1. On October 2, 2025, JMA moved for summary judgment. Defs.' Mot. Summ. J., ECF No. 11. That motion is fully briefed and ripe for review. Pl.'s Opp'n Mot. Summ. J., ECF No. 12; Defs.' Reply Supp. Mot. Summ. J, ECF No. 13.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66

(D.D.C. 2006) (citations omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Even so, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court may "evaluate an inadequately supported assertion of material fact and deem it not materially disputed." *Grimes v. District of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

Mr. Butturini claims that JMA owes him the four-month severance package promised in his Offer Letter because he was not terminated for cause. But no reasonable jury could agree with him based on the record before the Court. Thus, JMA is entitled to summary judgment.

The DCWPCL requires employers to timely pay their employees all wages that they have earned, even if they have been terminated. *Gupta v. 2nd Wave LLC*, No. 23-cv-3647, 2026 WL 147840, at *11 (D.D.C. Jan. 20, 2026) (citing D.C. Code § 32–1302); *see also* D.C. Code § 32–1303. The DCWPCL defines wages as "all monetary compensation after lawful deductions, owed by an employer," and expressly includes in that definition "remuneration promised or owed . . . [p]ursuant to a contract for employment[.]" *Id.* §§ 32-1301(3)(E).

4

Here, Mr. Butturini's claim hinges on whether the severance package promised in his Offer Letter is remuneration that he is owed. Assuming that the Offer Letter is an enforceable contract,[2] it imposed a clear obligation on JMA to pay Mr. Butturini a four-month severance package if "there [was] a change in the Company's ownership or reorganization that directly cause[d] [his] termination . . . for reasons other than cause." Offer Ltr. 2. To survive summary judgment, Mr. Butturini thus must point to evidence in the record from which a reasonable jury could conclude that this obligation was triggered but not fulfilled. He has failed to clear this hurdle.

First, and most importantly, the record does not support that Mr. Butturini was terminated "for reasons other than cause." *Id*. He was hired as the "Vice President of Business Development." One need look no further than his title to figure out the purpose of his job: to develop business. And yet, he admits that for nearly two years, he did not bring in a single dollar of "revenue generating business." PSOF ¶ 10; Butturini Dep. 100:2–6. It is thus not hard to understand why Ms. Martindell told him orally and in writing that his "performance" was one of the reasons for his termination. Butturini Dep. 99:19–22; Termination Ltr.[3] Nor could this have been a surprise to Mr. Butturini. Despite his unconvincing arguments to the contrary—for example, that bringing in revenue was "not a specific duty" identified in his Offer Letter, Opp'n 3–4—he admits that the performance of his job had to do with "bringing in revenue generating business," and that he understood after the May 2024 meeting that his job would be at risk if his performance did not

---

[2] JMA does not concede that the Offer Letter is a contract but acknowledges that any entitlement Mr. Butturini may have to additional severance depends on construing and interpreting the Offer Letter as a contract. *See* Defs.' Mot. 5; Opp'n 2–3.

[3] Ms. Martindell also filled out JMA's internal form documenting Mr. Butturini's "End of Employment" by checking the boxes for "Performance" and "Change in Priorities and Organizational Direction" and by noting that he "did not meet [Ms. Martindell's] expectations." Martindell Dep., Ex. 5, ECF No 12-3.

improve. Butturini Dep. 101:4–12; 97:14–17. No reasonable jury could look at this record and conclude that Mr. Butturini was not terminated for cause.

Second, the record similarly does not support that JMA had a "change in . . . ownership or reorganization that directly cause[d]" Mr. Butturini's termination. Offer Ltr. 2. Mr. Butturini acknowledges that Ms. Martindell has always been and remains the sole owner of JMA. PSOF ¶ 12. Nor does the record suggest that there was a "reorganization" that directly caused his termination. It certainly appears, as Mr. Butturini asserts, that JMA made changes to its business development team during Mr. Butturini's tenure—e.g., bringing on new personnel, adjusting supervisory structures, and the like. Opp'n 7. But none of those changes caused Mr. Butturini's termination. Indeed, they were the type of changes explicitly contemplated in his Offer Letter, which stated that JMA reserved the right to "change [his] title, duties . . . and reporting relationships from time to time as it deem[ed] necessary and appropriate." Offer Ltr. 2. Under the circumstances, no reasonable jury would understand Ms. Martindell's references to a "change in priorities and organizational direction" as indicating an organizational overhaul requiring Mr. Butturini's termination or triggering the severance payment. Termination Ltr. Rather, it would recognize that Ms. Martindell was invoking the sorts of gentle platitudes that employers often use when terminating an employee whose performance leaves the employer no option but to part ways.

At bottom, the material facts in this case are simple and not genuinely disputed. Mr. Butturini was hired by JMA to bring in business. He did not do so. So, he was fired. No reasonable jury presented with these facts could find that Mr. Butturini was terminated for reasons other than cause and thus that JMA must pay him the severance package that he claims he is owed.

6

**CONCLUSION**

For all these reasons, the Court grants JMA's Motion for Summary Judgment. ECF No. 11.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 31, 2026

7